581 P.2d 267

**Albert R. SEWELL and Helen Sewell, husband and wife, Appellants,**

v.

**George BROOKBANK and Rose Brookbank, husband and wife, Melvin Schonhorst and Ruth Schonhorst, husband and wife, George Girard and Emojean Girard, husband and wife, Donald Horn and Mildred Horn, husband and wife, Donald Bertolini and Shirlee Bertolini, husband and wife, Hiroshi Muramoto and Josephine Muramoto, husband and wife, Appellees.**

No. 2 CA–CIV 2782.

Court of Appeals of Arizona, Division 2.

May 4, 1978.

Rehearing Denied June 12, 1978.

Review Denied July 11, 1978.

Messing Law Offices by John H. Messing, Tucson, for appellants.

Sidney L. Kain, Chandler, Tullar, Udall & Redhair by D. B. Udall, Tucson, for appellees.

## OPINION

HOWARD, Judge.

This is an action for libel and slander by a school teacher against the parents of some of his pupils. The trial court granted summary judgment in favor of the parents and the teacher now challenges that decision.

The record shows that appellant, Albert Sewell, is a chemistry teacher at Amphitheater High School. The appellees are parents of children who were taking chemistry from Mr. Sewell. Appellee Emojean Girard is a lawyer and her husband is a chemist. They became concerned because their daughter, Renee, was doing poorly in chemistry. Renee told her parents that she did not understand what was going on in class and was afraid to ask any questions of Mr. Sewell. The Girards saw Mr. Sewell one night at an open house and talked to him about Renee but were not satisfied with his answers. Other parents present at the open house were experiencing similar problems with their children and Mr. Sewell. These parents, and others, later held an informal meeting. They discussed the fact that all of their children were having similar problems. Some of the students were outstanding students and could not afford bad grades. Some of the parents were teachers, and Mr. Muramoto was a member of the Amphitheater School Board. As a result of this meeting a list of grievances was set forth in writing as follows:

"*     *     *

1. Mr. Sewell discourages questions from the students by 'putting them down' or by penalizing them and that therefore many of the students are frightened to ask questions of him.

2. Students who need and seek additional help are not given that help by Mr. Sewell but are referred by him to students tutors who comprehend the subject matter but, perhaps, a degree better than the student seeking the help. It should be noted also that no student who does not tutor is given an 'A' in Mr. Sewell's class.

3. Mr. Sewell does not discuss the subject matter with the class often enough.

4. Mr. Sewell expresses the attitude that if a student cannot 'make the grade' then that student should 'drop out.'

5. He covers the subject matter too fast and does not allow a sufficient amount of time for the student to digest the material covered before proceding [sic] onto the next subject.

6. The teacher is more concerned with rote teaching than he is with instructing the students on the basic concepts of chemistry which we believe essential to their understanding.

7. The students have not been given instructions in safety procedures and the teacher has left the class unattended during periods when the bunson [sic] burners were on and chemical experiments were in process and has otherwise ignored safety factors in conducting his class."

The above list was compiled after the parents had spoken to all of their children.

The parents held a meeting with Mr. Murphey, the principal of Amphitheater High School, and submitted their list of grievances to him. Mr. Murphey advised the parents that he had already scheduled an appointment to talk with Mr. Sewell because another parent had also complained. He told them that he would present their objections to Mr. Sewell. He further told the parents that he would let them know in about a week what he had found out. After a week had passed and the parents had received no answer from Mr. Murphey, they tried to contact him but he would not communicate with them. The parents held another meeting and decided that they would have to make another appointment with Mr. Murphey, not only because he had failed to communicate with them but also because it had come to their attention that Mr. Sewell had commented in class about the parents who were making complaints and had begun doing other things that they deemed to be retaliatory against their children.

Another meeting was had with Mr. Murphey. At that time some of the parents talked about having their children drop out of the class and some of the other parents asked Mr. Murphey to provide them with an alternate teacher. The meeting ended with the parents agreeing to let their children remain in the class while Mr. Murphey explored some possibilities. Two days later, Mr. Murphey sent the parents a written response by Mr. Sewell in which he denied all of the complaints. Some of the parents, after discussing Mr. Sewell's response among themselves and their children were dissatisfied with Mr. Sewell's answers. They did not believe that Mr. Sewell was being truthful, so they scheduled a meeting with Dr. Neel, the superintendent of the Amphitheater School District. They informed Dr. Neel of their complaints and their dissatisfaction with Mr. Sewell's response. Dr. Neel was asked if the students could drop out of the class this semester and make it up in another semester. There was a discussion about securing an alternate teacher the next semester and placing a monitor in Mr. Sewell's class. The parents left the meeting with Dr. Neel under the impression that he was going to make some sort of provision for an alternate teacher but when time passed and no steps were being taken they became concerned since the semester was rapidly coming to a close. The parents therefore appeared at a school board meeting where they presented their grievances to the Board of Trustees of the Amphitheater School District. Mr. Muramoto did not participate as a member of the board at that meeting. The parents

presented their complaints to the school board and asked for an alternate teacher in chemistry for the next semester. The school board members stated that they thought Mr. Sewell's classes should be monitored. They also suggested another board meeting which would be in the form of a hearing, with Mr. Sewell, his attorney and the parents. However, before another board meeting could be held, this complaint was filed.

We shall assume for the purposes of this opinion that the list of grievances impute a want of professional capacity on the part of Albert Sewell and therefore are defamatory if false. *Oberkotter v. Woolman,* 187 Cal. 500, 202 P. 669 (1921). Annot., 40 A.L.R.3d 490. Appellees contend that the communication by the parents was protected by an absolute, or at the very least, a qualified privilege.[1] Appellants contend that the qualified privilege has been abolished by *Peagler v. Phoenix Newspapers, Inc.,* 114 Ariz. 309, 560 P.2d 1216 (1977), and that no absolute privilege is involved.

In *Peagler* the court adopted the standard of liability in the Tentative Draft of the American Law Institute, Restatement (Second) of Torts, Sec. 580B, April 5, 1975. It provided:

"580B. Defamation of Private Person

One who publishes a false and defamatory communication concerning a private person, or concerning a public official or a public figure in relation to a private matter, is subject to liability, if, but only if, he

(a) knows that the statement is false and that it defames the other,

(b) acts in reckless disregard of these matters, or

(c) acts negligently in failing to ascertain them."

■ It should be observed that the Tentative Draft adopted by the court follows defamation to be based upon negligence when the defamatory communication concerns a private person or a public official or public figure in relation to a *private* matter.

The persons defamed in *Peagler* were neither public officials nor public figures. *Peagler* does not purport to change the law with respect to public officials or public figures as enunciated in *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). Neither does the Restatement as finally adopted in 1976. Sec. 580B now states:

"One who publishes a false and defamatory communication concerning a private person, or concerning a public official or public figure *in relation to a purely private matter not affecting his conduct, fitness or role in his public capacity,* is subject to liability, if, but only if, he

(a) knows that the statement is false and that it defames the other,

(b) acts in reckless disregard of these matters, or

(c) acts negligently in failing to ascertain them."

(Emphasis added)

Therefore, if Albert Sewell is a public "official", Sec. 580B is inapplicable. As far as the law of defamation is concerned, teachers are "public officials". *Basarich v. Rodeghero,* 24 Ill.App.3d 889, 321 N.E.2d 739 (1974).

Thus the section of the Restatement (Second) of Torts which applies here is Sec. 580A. It states:

"One who publishes a false and defamatory communication concerning a public official or public figure in regard to his conduct, fitness or role in that capacity is subject to liability, if, but only if, he

(a) knows that the statement is false and that it defames the other person, or

(b) acts in reckless disregard of these matters."

Under Sec. 580A actual malice must be present. The effect of Sec. 580A is the same as a conditional privilege since a conditional privilege precludes liability if it is not abused, Restatement (Second) of Torts,

---

1. A qualified privilege has been recognized as existing in parents in the case of *Hoover v. Jordan,* 27 Colo.App. 515, 150 P. 333 (1915),

and in a school patron in the case of *Schulze v. Coykendall,* 218 Kan. 653, 545 P.2d 392 (1976).

Sec. 599, and there is an abuse of the conditional privilege if the person who publishes the false communication acts with actual malice. Restatement (Second) of Torts, Sec. 600 and Comment *b.* thereof.

Appellants contend that if actual malice is necessary, its existence is shown by the fact that appellees did not present their list of grievances to him first, but instead, took it to his principal and, despite the fact that Mr. Sewell answered the complaints and the principal told appellees he thought Mr. Sewell was a good teacher, appellees persisted by going to the superintendent and to the school board with the complaints.

The question of malice versus no malice is for the jury, but there is always the preliminary question—Is there any evidence of malice to go to the jury? This is for the court to decide. *Miller Ins. Agency v. Home Fire & Marine Ins. Co. of California,* 100 Mont. 551, 51 P.2d 628, 634 (1935). We do not believe there is any evidence here which shows actual malice. The fact that Mr. Sewell denied the charges and gave his version and the fact that the principal told appellees he thought Mr. Sewell was a good teacher does not mean that the appellees, by pursuing the matter, acted with knowledge of the falsity of their charges. They knew he denied the allegations, but because of the nature of the complaints, they did not know they were "false" and his mere denial does not mean such allegations were false. Nor does the evidence show a reckless disregard of the truth, i. e., a high degree of awareness of probable falsity. See *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *St. Amant v. Thompson,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). If we were to hold otherwise then once the teacher denies any allegation of incompetency even though the adequacy of his answers are still in question, the matter is ended. We cannot condone such a result which would allow school officials to shield the incompetent teacher and thus defeat the legitimate interest of the parents in their children and the school system.

Appellants contend that at one of the meetings between the parents or at the school board meeting, someone stated that his mental condition was unstable. Appellants have not cited to us any evidence to support this contention. If the moving party on motion for summary judgment has made a prima facie showing that no genuine issue of material fact exists, the opposing party has the burden to produce sufficient evidence that there is indeed an issue and cannot fail to press his argument and defeat the motion by his simple contention that an issue of fact exists. He must show that the evidence is available that would justify a trial. *W. J. Kroeger Co. v. Travelers Indemnity Company,* 112 Ariz. 285, 541 P.2d 385 (1975).

Affirmed.

HATHAWAY, J., and LLOYD FERNANDEZ, Superior Court Judge, concur.

NOTE: Chief Judge JAMES L. RICHMOND having requested that he be relieved from consideration of this matter, Judge LLOYD FERNANDEZ was called to sit in his stead and participate in the determination of this decision.