640 P.2d 1110

Julian PEAGLER and Dodge City
Motors, Inc., an Arizona
corporation, Appellants,

v.

PHOENIX NEWSPAPERS, INC., an
Arizona corporation, and Albert J.
Sitter, Appellees.

No. 1 CA–CIV 4708.

Court of Appeals of Arizona,
Division 1, Department B.

Dec. 22, 1981.

Rehearing Denied Feb. 2, 1982.

Petition Denied Feb. 23, 1982.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Harry J. Cavanagh, Richard McC. Shannon, Phoenix, for appellants.

Snell & Wilmer, by Mark Wilmer, Lawrence Wright, Richard K. Mahrle, Phoenix, for appellees.

## OPINION

CORCORAN, Judge.

This case is before the appellate courts for the second time. On the first appeal, our supreme court analyzed and reformulated the law as it relates to persons defamed who are neither public officials nor public figures, in the wake of decisions by the United States Supreme Court on the subject. *Peagler v. Phoenix Newspapers, Inc.,*

114 Ariz. 309, 560 P.2d 1216 (1977).[1] Judgments in favor of the appellees, Phoenix Newspapers, Inc. and its reporter Albert J. Sitter, were reversed and the cause was remanded for a new trial. The case is now before us following a jury verdict for the same appellees. The appellants, Dodge City Motors, Inc. and its owner-president Julian Peagler, contend principally that the trial court erred in failing to give an instruction submitted by them involving the duty of a reporter and publisher to seek the truth. After review of this and the other arguments raised by appellants, we find no reason to reverse the judgment entered upon the jury's verdict.

We turn to the facts. In the summer of 1973, the appellee reporter Albert Sitter interviewed Vernon Terrell and Kay Runser, who had recently terminated employment with the Phoenix Better Business Bureau (hereinafter "the BBB"). Sitter was at the time concerned with the fact that the BBB was supporting an organization called the Direct Seller's Association in its opposition to certain consumer-protective legislation. Runser and Terrell indicated dissatisfaction with the manner in which consumer complaints were processed (or not processed) by the BBB. Sitter testified that Runser told him that the "heaviest flow of complaints" to the BBB were directed against Peagler's Dodge City. Sitter thereafter interviewed Jim White, Manager of the BBB. When Sitter mentioned that Peagler's Dodge City was one of three "main" subjects of complaints, White interrupted and volunteered the information that steps were being taken to cancel Dodge City's membership in the BBB. White alluded to a large number of complaints that he had received concerning Peagler's Dodge City and characterized the 21 complaints as involving charges of misrepresentation and apparent "bait-and-switch" tactics. Sitter subsequently had two conversations with Julian Peagler in which they discussed consumer complaints against Dodge City. Thereafter, on August 30, 1973, Phoenix Newspapers published an article by Sitter which stated, *inter alia*, that "the greatest number of complaints on file against any one company [at the BBB] . . . were lodged against Peagler's Dodge City." The article also quoted Jim White's characterization of the complaints. Since the pertinent portions of the article are set forth in our supreme court's opinion in the prior appeal, we need not repeat them here. *See* 114 Ariz. at 311–12, 560 P.2d at 1218–19.

At trial, appellants challenged the truthfulness of the statements attributed by Sitter to Runser and White. Runser indicated some disagreement with the specifics of certain quotations attributed to her about Peagler's Dodge City, and White acknowledged that he had "lied" to Sitter in certain respects. At the close of the eight week trial, appellants submitted a number of proposed jury instructions of which one, number 14A, read as follows:

Repetition of another's words does not release one of responsibility if the repeater knows that the words are false or inherently improbable, or there are obvious reasons to doubt the veracity of the person quoted or the accuracy of his reports.

In their "summary of argument," appellants challenge the trial court's refusal to give their proposed instruction 14A in the following terms:

The plaintiffs believe there was a miscarriage of justice by the court's failure to instruct on the duty of the court reporter to ascertain the truth. The evidence will show that the newspaper was concerned only with providing the consuming public with a balanced story irrespective of the truthfulness of the underlying statements. The instructions to the jury failed to advise them that a balanced story did not excuse a libelous statement. The plaintiffs' proposed instruction number 14a would have advised the jury that

1. The Arizona supreme court vacated this court's prior opinion reported at 26 Ariz.App. 274, 547 P.2d 1074 (1976).

a reporter cannot "accurately report" a libelous statement and be immune from responsibility. That error becomes sig-. nificant because the jury reached its decision in only about an hour and relied on the fact that it was a balanced story. i.e., gave both sides equal treatment.

The jury was instructed only on the issue of a balanced story rather than the underlying duty of a reporter to act reasonably in ascertaining *the truth.* That is the key issue presented by this appeal. The other issues of admitting an unrelated article published nine months before and prohibiting the introduction of a tape recorded conversation and the refusal to give certain other instructions pale in importance in relation to the error committed in not properly instructing on the duty of a reporter to act as a reasonably prudent reporter in ascertaining the truth.[2] (Emphasis in original.)

## I. REQUESTED INSTRUCTION 14A

In its 1977 decision in this case our supreme court was faced with the task of choosing a rule of liability for the asserted defamation of a person who is neither a public official nor a generally recognized "public figure." That task was put upon them by recent United States Supreme Court determinations in the field of defamation in the context of first amendment rights, commencing with the landmark decision in *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). The Court held in *New York Times* that a public official could not recover for defamation in the absence of a determination that the publisher acted with actual malice, that is, with knowledge of falsity or in reckless disregard of the truth. The rule of the *New York Times* case was subsequently broadened to include "public figures" in *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094, *rehearing denied,* 389 U.S. 889, 88 S.Ct. 11, 19 L.Ed.2d 197 (1967). In *Rosenbloom v. Metromedia, Inc.,* 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), a plurality of the high court further extended the rule to publications relating to private individuals where the publication was one of general public concern. A majority of the court subsequently retreated from the plurality holding in *Rosenbloom* in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). The majority in *Gertz* declared that:

> [S]o long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual.

418 U.S. at 347, 94 S.Ct. at 3010, 41 L.Ed.2d at 809 (footnote omitted).

Our supreme court followed the clear indications of *Gertz* and adopted for Arizona the negligence test for liability set forth in section 580B of the current tentative draft of the Restatement of Torts (Second) (Tent. Draft No. 21, 1975). Section 580B, as adopted by our supreme court, reads as follows:

580B. DEFAMATION OF PRIVATE PERSON

One who publishes à false and defamatory communication concerning a private person, or concerning a public official or a public figure in relation to a private matter, is subject to liability, if, but only if, he

(a) Knows that the statement is false and that it defames the other,

---

2. In order to illustrate the significance of the trial court's failure to give requested instruction 14A, appellants rely upon a statement made by their own trial attorney at oral argument on their motion for a new trial. The attorney apparently had a conversation with an unnamed juror, after the verdict, concerning the conclusions which the jury drew from the court's instructions, as given, and the appellee's evidence that they presented a "balanced story." Courts will not consider affidavits of jurors to impeach or explain a verdict. Rule 606(b), Arizona Rules of Evidence; *Ott v. Samaritan Health Service,* 127 Ariz. 485, 622 P.2d 44 (App.1980); *Valley National Bank v. Haney,* 27 Ariz.App. 692, 558 P.2d 720 (1976). Similarly, this court will not consider any other evidence of statements by, or attributed to, a juror for like purposes. Rule 606(b), Arizona Rules of Evidence.

(b) Acts in reckless disregard of these matters, or

(c) Acts negligently in failing to ascertain them.

*Peagler v. Phoenix Newspapers, Inc.,* 114 Ariz. at 315, 560 P.2d at 1222. A substantially similar version of this section was finally adopted by the American Law Institute. *See* Restatement (Second) of Torts § 580B (1977).

■ The trial judge in the present case instructed the jury that the article written by Sitter and published by Phoenix Newspapers was defamatory. He then instructed the jury substantially in terms of the Restatement, quoted above, and also as follows:

Plaintiffs must also prove in this case that the contents of the article complained of were such as to warn a reasonably prudent reporter or publisher of its defamatory potential.

I instruct you that the article is defamatory as to plaintiffs.

The fact that a publication is false does not in and of itself give rise to any liability against those responsible for the publication.

Plaintiffs claim that defendants were negligent. Negligence is the failure to use reasonable care. Negligence may consist of action or inaction. A person is negligent if he fails to act as an ordinarily careful person would act under the circumstances.

Before you can find the defendants liable, you must find that the defendants' negligence caused the plaintiffs' injury. Negligence causes an injury if it helps produce the injury, and if the injury *would not have happened without* the negligence.

Pertinent principles in regard to jury instructions are set forth in *Kauffman v. Schroeder,* 116 Ariz. 104, 106, 568 P.2d 411, 413 (1977) (citations omitted), as follows:

Instructions must be viewed as a whole and not piecemeal; the test being, upon the whole charge, whether the jury will gather the proper rules to be applied in arriving at the correct decision. It is also

the rule that unless an issue is supported by the evidence, it is improper to instruct upon it. It is not error for the court to refuse to give requested instructions adequately covered elsewhere by instructions which are given.

■ In our view, the essential gist of appellants' requested instruction number 14A was covered in the instructions actually given by the trial judge. Nothing in those instructions stated or suggested that appellees could, with impunity from liability for negligence, merely quote what others told them. To the contrary, they conveyed the United States Supreme Court's basic principle that liability had to be predicated upon some fault or neglect of the reporter. Reading the instructions as a whole, we believe that they clearly convey the idea that there is liability for negligence in failing to ascertain the truth of facts. Nor do the instructions suggest that "balance" or "story balance" is in any sense a substitute for the exercise of due care. It appears that the requested instruction is, in the context of this case, a refinement offered by appellants in an effort to refute what they regarded as a principal line of defense. The jury, however, was adequately instructed as to the relevant law by the court. The requested instruction was not essential, since its subject matter was covered by other instructions. Failure to give it was not error.

## II. THE EARLIER ARTICLE

■ The trial court admitted into evidence an article written by Sitter and published in a January, 1973 edition of the Arizona Republic. The article concerned a used-car customer of Peagler's Dodge City who had purchased a secondhand Studebaker. The customer charged a "shell game" and there were allusions to "bait-and-switch" tactics. The article was the subject of a motion *in limine* by appellants which was denied and they claim prejudicial error in its admission at trial.

Appellees properly point out two sound bases for admission of the article into evi-

dence. First, it was relevant to show Sitter's background knowledge of Peagler's Dodge City, which was in turn relevant to the question of whether he exercised due care or was cursory and negligent in his investigation of the charges against Dodge City in the summer of 1973. Second, appellants sought punitive damages against appellees on the basis that the August 30 article was published with knowledge of falsity or with reckless indifference to its contents. Sitter's experience with the subject matter had obvious relevance to these claims directed against both appellees. We agree with appellees' statement in their brief that "[w]ithout knowing the factual context from which Mr. Sitter viewed the information coming to him, it would be impossible to judge whether Mr. Sitter acted as a reasonably prudent reporter, or acted in reckless disregard of the truth." The story was relevant to show that factual context. There was accordingly no error.

## III. THE BARTON CONVERSATION

 Randall Barton was Production Manager of Phoenix Newspapers and a friend of Julian Peagler. He died prior to trial. Shortly before the August 30 publication, Peagler called Barton on the telephone and tape-recorded the conversation. Appellants sought to admit a transcript of the conversation into evidence, one purpose being an effort to rebut a suggestion, perceived by appellants at trial, that they were being characterized as attempting to pressure the newspaper into refraining from publishing a critical article. It is also contended that the conversation gave notice to the newspaper that its facts were incorrect. Appellees objected to admission of the tape transcript on the grounds that it was hearsay. While appellants' reply brief in this court contends that the transcript was not hearsay, their contentions at the trial and in their opening brief in this court were that exceptions to the hearsay rule were applicable. An argument advanced for the first time in a reply brief comes too late. *Miller v. Boeger*, 1 Ariz.App. 554, 405 P.2d 573 (1965).

Appellants specifically contend that one or more of the following provisions of rule 803 of the Rules of Evidence apply:

Rule 803. Hearsay Exceptions; Availability of Declarant Immaterial

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(1) Present sense impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.

(2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

(3) Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

It is plain that none of these exceptions to the hearsay rule apply. The conversation could perhaps most aptly be described as a "status report" by Peagler in regard to his interviews with Sitter and Dodge City's problems with the BBB. Nothing in the conversation relates to a description or explanation of a presently occurring event or condition, so exception (1) is inapplicable. *A fortiori*, there is no "startling" event or condition, so that exception (2) is likewise inapplicable. Exception (3) is inapplicable for the reason that Peagler's state of mind was not in issue in the lawsuit. *See* McCormick on Evidence § 294, at 694–96 (2d Ed. 1972).

As the matter was presented to the trial court, there was no error, and there is accordingly no need to discuss whether an erroneous decision on admissibility would have been harmless.

## IV. OTHER INSTRUCTIONS

Appellants' last contentions are all concerned with jury instructions. Appellants claim that it was error for the trial court not to give their requested instructions numbered 6, 7, 12, 13A, and 16. They also contend that it was error for the court to give defendants' requested instructions numbered 2 and 3.

■ Appellants' proposed instruction number 6 defined libel and libel *per se*.[3] The trial court, however, instructed the jury that the article *was defamatory*. With defamation already established, there was no need for a definitional instruction designed to assist the jury in making that threshold determination. The focus turned to falsity and the exercise of due care.

■ Appellants' requested number 7 was a declaratory instruction to the jury that the article was false as a matter of law.[4] The instruction could only have been justified if the article was indisputably false in all material respects. Appellants have simply not shown, nor attempted to show, us that the article was false in all these respects.

■ Requested instruction number 12 is concerned with the actionability of insinuations.[5] Appellants argue that appellees insinuated that Peagler was the "biggest crook in Phoenix, Arizona" or the "worst businessman in town." Appellants point to no specific language in the article in support of their contention; they simply assert that the trial court's ruling deprived them of the opportunity to argue the actionability of the perceived insinuations quoted above. The trial judge declared the article, as a whole, to be defamatory. Appellants were not precluded from pointing out to the jury various aspects of its defamatory character. The requested instruction was both unnecessary and inappropriate.

■ Requested instruction 13A purports to define knowledge and states in part that "[t]he means of knowledge are ordinarily the equivalent in law to knowledge."[6] It goes on to elaborate circumstances under which a party in a civil action is chargeable with knowledge. The requested instruction is not taken from any authority on the law of libel or slander. Its verbiage could raise questions of constitutional magnitude. The question in this case is not, strictly speaking, whether certain knowledge will be im-

**3. REQUESTED INSTRUCTION NO. 6**

This action is commonly known and termed a libel suit. For the purposes of this action, I define libel to you as: Every publication that tends to bring any person or corporation into disrepute, contempt or ridicule, or which tends to impeach his honesty, integrity, virtue or reputation, or which tends to deprive him or it of public confidence, is libelous per se. "Per se" means libelous in itself, without other proof. I further instruct you that the word "tend" means to have influence towards producing a certain effect, or to exert an influence.

I further instruct you that it would be libelous in itself, or libelous per se, to falsely state that a company has the greatest number of complaints in the Better Business Bureau or to falsely state that Dodge City Motors, Inc. had the longest record of unresolved consumer complaints, and was allowed to remain a member of the Better Business Bureau in good standing.

**4. REQUESTED INSTRUCTION NO. 7**

I instruct you that as a matter of law, the plaintiff in this case has established the falsity of the libelous publication upon which this suit has been brought.

**5. REQUESTED INSTRUCTION NO. 12**

I instruct you that to render a statement defamatory and libelous, it is not necessary that the charge be made in a direct, positive, or open manner. A mere insinuation may be as actionable as a positive assertion if the meaning is plain.

**6. REQUESTED INSTRUCTION NO. 13A**

I will now define knowledge for you. The means of knowledge are ordinarily the equivalent in law to knowledge. So, if it appears from the evidence in the case that a person had information which would lead a reasonably prudent person to make inquiry through which he would surely learn certain facts, then this person may be found to have had actual knowledge of those facts, the same as if he had made such inquiry and had actually learned such facts.

That is to say, the law will charge a person with notice and knowledge of whatever he would have learned, upon making such inquiry as it would have been reasonable to expect him to make under the circumstances.

puted to a defendant, but whether the defendant *was negligent* in failing to obtain or ascertain additional information. There is no claim by appellants that the trial court did not adequately define negligence.

■ Appellants' requested instruction number 16 is concerned with damages.[7] Appellants contend, without citation of authority, that the instruction on damages was inadequate. The verdict, however, was one of absolute nonliability for the defendants. Appellants do not suggest how the instruction on damages might have affected the verdict. No harmful error is shown; this argument is inapposite.

■ Finally, appellants complain of the trial court giving appellees' instructions numbered 2 and 3.[8] Instruction number 2 is taken substantially from *Peagler*, 114 Ariz. at 313, 560 P.2d at 1220. Number 3 merely makes the point that falsity alone is not determinative of liability, i.e. a showing of negligence or more serious conduct is also required. We fail to see that giving either or both of these instructions, considered alone or in the context of the instructions offered by appellants and refused by the court, was error.

## V. CONCLUSION

This case took some eight weeks to try. The jury rendered its verdict, and we have found no merit in any of the issues raised on appeal.

Affirmed.

EINO M. JACOBSON, P. J., and MELVYN T. SHELLEY, Judge, concur.

---

7. REQUESTED INSTRUCTION NO. 16

In assessing plaintiffs' damages, you are to be guided by your own common experience and judgment relating to the evidence in the case applied to the law as I have given it to you. In arriving at the amount of plaintiffs' damages, you may consider all the proven facts and circumstances surrounding the publication of the libelous matter, and you will award plaintiffs damages in such an amount as will fully, fairly and adequately compensate Julian Peagler and Peagler's Dodge City Motors, Inc., for the injuries and damages they have suffered.

In arriving at the amount of your verdict you may take into consideration the extent of defendants' publication, the aggregate number of readers of the publication, the character of the charges, the language in which the libelous matter was expressed and its tendency and probable effect, and the natural and probable effect, if any, upon the plaintiffs' standing in the community.

8. INSTRUCTION NO. 2

Plaintiffs must also prove in this case that the contents of the article complained of were such as to warn a reasonably prudent reporter or publisher of its defamatory potential.

INSTRUCTION NO. 3

The fact that a publication is false does not in and of itself give rise to any liability against those responsible for the publication.

---

*NOTE*: The Honorable MELVYN T. SHELLEY was authorized to participate in this case by the Chief Judge of the Arizona Supreme Court pursuant to Ariz.Const. art. VI, § 3.