636 P.2d 1236

William H. HANSEN; Philip E. Jordan; Fred Madrid; Melvyn Robert Paulsen; Terry Michael Valentine; Robert Ayala; and Robert Chittendon, Plaintiffs-Appellees,

v.

Charles S. STOLL and Jane Stoll, his wife, Defendants-Appellants.

No. 1 CA–CIV 4807.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 24, 1981.

Rehearing Denied Nov. 2, 1981.

Review Denied Nov. 17, 1981.

Marton, Halladay & Hall, P.A. by Kraig J. Marton, Phoenix, for plaintiffs-appellees.

Lewis & Roca by John P. Frank and Jose A. Cardenas, Phoenix, for defendants-appellants.

## OPINION

EUBANK, Judge.

Following a jury trial, the appellant herein, Charles Stoll, was found to have maliciously defamed all of the appellees. The seven appellees-plaintiffs, all of whom were at some time connected with the Federal Drug Enforcement Administration (DEA), recovered general and punitive damages against Stoll.[1] All seven claimed damage to their professional reputations as law enforcement personnel resulting from Stoll's defamation.

The events leading up to this appeal began on November 27, 1974, when the Phoenix office of the DEA responded to a tip that a quantity of marijuana was to be dropped at a remote airstrip near Oatman, Arizona. Several DEA agents and their adjuncts went to Oatman for surveillance and enforcement duties. Upon their arrival they found only one airstrip, privately maintained on a leased mining claim operated by Stoll.

Because the agents did not know the extent of Stoll's involvement, if any, in the marijuana activity, they kept their identity unknown to him. To this end, the agents, dressed in casual clothes, staged a mock search of themselves by local sheriff's deputies in Stoll's presence. Stoll was informed by the deputies that the "suspects" had been smoking marijuana.

Stoll was concerned by the presence of these strangers because there had been recent equipment thefts from his mining claim. Fearing more theft, Stoll visited his mine three times on the evening of November 27th. His third visit was prompted in part by a neighbor's phone call relating unusual activity at the mine. Stoll armed himself with a shotgun, and he and Bob McKenna went to investigate at approximately 10:00 p. m.

Unknown to Stoll, an airplane had in fact landed and deposited 780 pounds of marijuana on the airstrip. The agents observed this, made arrests, and returned to load the marijuana in a truck for transportation to Phoenix. They had forced open Stoll's gate and were about to load the marijuana when Stoll arrived with his shotgun. A confrontation ensued.

1. Agents Jordan, Hansen, Paulsen and Valentine were each awarded $1,000 actual and $10,000 punitive damages. Agents Madrid, Ayala and Chittendon were awarded $500 actual and $1,000 punitive damages.

Stoll took the agents by surprise and held them at bay with his shotgun. The agents offered their identification, but Stoll, recognizing two of the agents from the mock search earlier in the day, refused to examine their badges. He insisted that the sheriff's deputy himself identify the agents. The sheriff finally arrived, identified the agents, and told Stoll to leave. Stoll did leave, but he again confronted the agents at a phone booth in Oatman some time later. At this confrontation, Stoll began criticizing the agents' operations. He was allowed to speak over the telephone with Philip Jordan, the agents' supervisor in Phoenix, but Stoll immediately began criticizing Jordan. At this juncture, Stoll was arrested for assaulting a federal officer.

Stoll was indicted by the grand jury, tried in federal court on the charge, and was convicted of felonious assault on federal agents. His conviction was affirmed by the Ninth Circuit, and the Supreme Court denied certiorari. *See U. S. v. Stoll*, 549 F.2d 810 (9th Cir. 1977), *cert. den.* 430 U.S. 956, 97 S.Ct. 1601, 51 L.Ed.2d 805 (1977).

Since the incident of November 27, 1974, Stoll's plight has received considerable attention from the news media. Many articles have been published in Arizona newspapers, and there have been radio and television accounts of Stoll's side of the story. Stoll believed that the agents had perjured themselves at the grand jury hearings, then changed their testimony at his criminal trial. Stoll also believed that the agents were attempting to cover up the true nature of the events of November 27th. He expressed these beliefs in the publications that form the basis of this defamation suit.

After Stoll's conviction, he accused all the agents involved of perjury. He claimed that he was "set-up" by the agents, who were supposedly collaborating with his political foes in Mohave County. Stoll further claimed that the agents themselves were dealing in marijuana, and that the federal government was attempting to suppress the truth. Several letters were written by Stoll demanding that these agents be discharged. One letter in particular was addressed to the United States Attorney's Office in Tucson, specifically referring to Agent Hansen and alleging many misdeeds by the agents involved. To put an end to these remarks, Hansen and six of the other agents initiated this defamation action.

## I. ACTUAL MALICE

In reviewing this case, we note at the outset that Stoll's remarks were directed at public officials. *See Rosales v. City of Eloy*, 122 Ariz. 134, 593 P.2d 688 (App.1979). Therefore, plaintiffs must carry the burden of showing actual malice as defined in *New York Times, Inc. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). We note also that appellate courts have traditionally applied a close scrutiny to the evidence regarding actual malice. *See Sewell v. Brookbank*, 119 Ariz. 422, 426, 581 P.2d 267, 271 (App.1978); *Phoenix Newspapers, Inc. v. Church*, 24 Ariz.App. 287, 298, 537 P.2d 1345, 1356 (1975). It is against this background that we begin our analysis.

The *New York Times* test for actual malice has been well stated in § 580A of the Restatement Second of Torts (1976). It has been adopted in Arizona, *Sewell v. Brookbank*, 119 Ariz. at 425, 581 P.2d at 270, and requires that the defamatory statements be published with knowledge of their falsity, or with reckless disregard of their falsity. In either event, the statements must be false, and must be defamatory.

The question of whether Stoll's statements were false was not seriously argued in the court below. Most of the testimony related only to Stoll's reasons for believing them to be true, rather than their factual accuracy. All plaintiffs denied the charges, and Stoll put on little affirmative evidence to the contrary. From our review of the record, we cannot conclude that the jury erred in finding that the statements were indeed false. We must also conclude that the statements were defamatory per se, in that they alleged perjury and other crimes involving moral turpitude. *See* Restatement Second of Torts, §§ 559, 571.

Nonetheless, it seems apparent that Stoll actually believed his accusations. On the claim of perjury, for example, there were in fact some discrepancies between the agents' testimony at the grand jury proceedings and at the trial.[2] While Stoll may have been quite unreasonable in his beliefs, the evidence is simply insufficient to show that he knew his statements were false. Thus, we turn our inquiry to whether Stoll acted in reckless disregard of the truth.

The term "reckless disregard" has been defined to mean a high degree of awareness of probably falsity. *Sewell v. Brookbank, supra,* 119 Ariz. at 426, 581 P.2d at 271. *See also, Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *St. Amant v. Thompson,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). To the extent that mere negligence in ascertaining the truth is insufficient to satisfy this standard, it is a subjective test. *Gertz v. Robert Welch, Inc., supra,* 418 U.S. at 334, n. 6, 94 S.Ct. at 3004. Nevertheless, reckless disregard may be proven by objective facts. As stated in *St. Amant v. Thompson, supra* :

> The defendant in a defamation action brought by a public official cannot, however, automatically insure a favorable verdict by testifying that he published with a belief that the statements were true. The finder of fact must determine whether the publication was indeed made in good faith. Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation.

390 U.S. at 732, 88 S.Ct. at 1326.

In other words, a person cannot close his eyes to the obvious truth, yet still claim lack of knowledge. Such was the conduct of Stoll. His claims of perjury were adequately laid to rest during the appeals of his criminal conviction. His claims of conspiracy and smuggling were investigated and found to be without merit. Nevertheless, he persisted. Although one can appreciate the fact that Stoll was merely trying to vindicate himself, he was attempting to do so by repeatedly making slanderous allegations against the appellee agents without factual support. We hold that there was sufficient evidence to support a determination by the jury that he was acting in reckless disregard of the truth when behaving in this manner. Because we so hold, we find it unnecessary to reach the issue of whether Stoll's statements were protected by a qualified privilege.

## II.  PUBLICATION

To be actionable as a matter of law, defamatory statements must be published in such a manner that they reasonably relate to specific individuals. *Rosenblatt v. Baer,* 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966). While the individual need not be named, the burden rests on the plaintiff to show that the publication was "of and concerning" him. *See* Restatement Second of Torts, §§ 564, 617; *Durski v. Chaneles,* 175 N.J.Super. 418, 419 A.2d 1134 (1980); *Giaimo v. Literary Guild,* 79 A.D.2d 917, 434 N.Y.S.2d 419 (App.Div.1981).

When a group of persons are defamed, the statements must reasonably relate to a certain individual member or members. Restatement Second of Torts, § 564 A; *Farrell v. Triangle Publications,* 399 Pa. 102, 159 A.2d 734 (1960). If the group is so large, or the statements so indefinite, that the objects of the defamatory statements cannot be readily ascertained, the statements are not actionable. *See Webb v. Sessions,* 531 S.W.2d 211 (Tex.Civ.App.1975) (statements defaming the Dallas police department, consisting of some 740 persons, held not actionable).

Many of the defamatory statements included herein are directed to the

---

**2.**  These discrepancies, however, are mostly attributable to the hearsay testimony that was allowed before the grand jury but excluded at the trial.

"agents" or "federal agents" or "federal narcotics agents". All plaintiffs testified that persons within and without the Federal Drug Enforcement Administration readily identified them as being the object of the defamatory remarks, and it is apparent from the record that Stoll intended his remarks to apply to the agents involved in the November 27, 1974 incident.[3] Nevertheless, only five[4] of the seven plaintiffs in this action were ever named specifically. There is no question relating to liability to these five plaintiffs. If liability is to run to the other two plaintiffs, they must sustain the burden of proving colloquium. *Prosser on Torts* § 111 at 749 (4th ed. 1971).

■ Connecting these two plaintiffs to the defamatory remarks requires knowledge of who was involved in the incident of November 27th. Clearly, this is not information possessed by the average reader of Stoll's statements. Within the law enforcement organizations involved, however, such information was available. It is not necessary to prove that every reader could make the connection, as publication to any individual will suffice. *See* Prosser, *supra* at § 113. But the connection must be reasonable under the circumstances. Restatement Second of Torts § 564; Prosser, *supra*, § 111.

■ The question of identification is for the jury to decide. Restatement Second of Torts § 617. The jury was properly instructed on the rules relating to group defamation, *see* Restatement Second of Torts § 564 A, and found Stoll liable to each plaintiff. Upon this state of the record, we hold that the publications were sufficiently specific to identify the seven plaintiffs to this action, and that the evidence supports the jury's determination.

## III. DAMAGES

The jury assessed damages in favor of each plaintiff. Agents Jordan, Hansen,

Paulsen and Valentine were each awarded $1,000 actual and $10,000 punitive damages. Agents Madrid, Ayala, and Chittendon were each awarded $500 actual and $1,000 punitive damages. Appellants challenge each of these various awards.

■ It has long been the law in Arizona that damages are to be assessed by the jury. As stated in *Arizona Publishing Co. v. Harris*, 20 Ariz. 446, 181 P. 373 (1919):

The question of damages for a tort, especially in a case of libel or slander, is peculiarly within the province of the jury, and unless the damages are so unconscionable as to impress the court with its injustice, and thereby induce the court to believe that the jury were actuated by passion, prejudice or partiality, it rarely interferes with the verdict. It is not for us to say that, had we been assessing the damages, we would have given a less amount. It is the judgment of the jury, and not the judgment of the court, which is to assess the damages in actions for personal torts and injuries.

*Id.* at 459, 181 P. at 378. Where actual malice has been shown, the jury may also award punitive damages. *Phoenix Newspapers, Inc. v. Church*, 103 Ariz. 582, 596, 447 P.2d 840, 854 (1968).

■ The jury in the instant case was instructed that an award of punitive damages must be based on a finding of common law malice; i. e., "ill-will, hatred, spite, or a desire to injure plaintiff." In light of Stoll's remarks and activities it was not unreasonable for the jury to decide that he did in fact have such motives. Furthermore, the evidence reflects that plaintiffs actually were injured by these remarks. Thus, we hold that the jury's award must stand.

## IV. COUNTERCLAIMS

The remaining issue on appeal involves the several counterclaims raised by Stoll.

3. Also included was Philip Jordan, the agents' supervisor in Phoenix with whom Stoll spoke on the telephone during Stoll's arrest in Oatman.

4. Agents Jordan, Hansen, Paulsen, Madrid and Valentine were all specifically named in at least one article. Agents Ayala and Chittendon were never specifically named.

The trial judge determined that all such claims were barred by the applicable statutes of limitation, and the appellant alleges error in this ruling. We shall address the counterclaims as presented by appellant.

Count I alleges fraud, and is deemed by appellants to constitute a claim for malicious prosecution. If such a claim is indeed intended, the cause of action has not yet accrued. To be actionable, the prosecution complained of must terminate in favor of the complaining party. *Owen v. Shores*, 24 Ariz.App. 250, 537 P.2d 978 (1975). Since this has not occurred, this claim must be dismissed purely as a matter of law.

Count II alleges false imprisonment. The claim accrued of necessity when Stoll was arrested, because he has not been imprisoned since. Therefore, the claim is barred by the one year statute of limitations. A.R.S. § 12–541(1) (1956). Further, since he was convicted of the crime charged, he could hardly be falsely imprisoned when held to answer for that charge.

Count III alleges libel and slander, and appellant has now admitted that this cause of action is barred by the statute of limitations.

Count IV alleges intentional infliction of mental distress. This claim accrued, if at all, upon Stoll's conviction in federal court. Thus, it is barred by the applicable two-year limitation period. A.R.S. § 12–542(1) (Supp.1980).

Count V alleges conspiracy to maliciously prosecute. Arizona does not recognize the existence of the tort of "conspiracy". *Tovrea Land and Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 412 P.2d 47 (1966); *Perry v. Apache Junction Elementary School Dist. No. 43*, 20 Ariz.App. 561, 514 P.2d 514 (1973); *rev. denied*, 111 Ariz. 1, 522 P.2d 761 (1974). Further, see Count I discussion above.

Count VI alleges invasion of privacy. Appellants assert that this cause of action is within the four-year general limitation period of A.R.S. § 12–550 and is still actionable

in the instant case. Appellees assert that it is within the two-year period of A.R.S. § 12–542, and is thus barred. Invasion of privacy has not been characterized in Arizona for limitation purposes, and we treat this question as a matter of first impression.

The Arizona statutes of limitation were adopted from Texas, and our courts have traditionally given weight to the Texas interpretation. *See Montano v. Scottsdale Baptist Hospital, Inc.*, 119 Ariz. 448, 450, 581 P.2d 682, 684 (1978). Texas has not decided this particular limitation question either, but A.R.S. § 12–542 and Vernon's Tex.Civ.Stat. § 5526 both cover "injuries done to the person of another." The courts of Texas have construed this phrase to include mental and emotional distress, *Kelly v. Western Union Telegram*, 17 Tex.Civ. App. 344, 43 S.W. 532 (1897); *Whitley v. Whitley*, 436 S.W.2d 607 (Tex.Civ.App.1968), and:

> In Arizona the gravamen of an action for invasion of the right of privacy is the injury to the feelings of the plaintiff, and the mental anguish and distress caused thereby. [Citations omitted].

*Fernandez v. United Acceptance Corp.*, 125 Ariz. 459, 462, 610 P.2d 461, 464 (App.1980).

In determining what period of limitation applies, we look to the nature of the cause of action. *Atlee Credit Corp. v. Quetulio*, 22 Ariz.App. 116, 117, 524 P.2d 511, 512 (1974). Since invasion of privacy involves personal injury (mental distress), and sounds mainly in tort, we hold that it is governed by the two-year limitation of A.R.S. § 12–542. *Cf. Sato v. Van Denburgh*, 123 Ariz. 225, 227, 599 P.2d 181, 183 (1979) (action for negligent accounting). Having so determined, we further hold that Stoll's claim for invasion of privacy is barred by this statute.

Finding no persuasive substance in appellant's contentions, we hold that the trial court properly dismissed all of Stoll's counterclaims.

We have carefully reviewed the record of this case, and we can find no basis for disregarding the jury's verdict. Applying

the settled rules of the law of defamation, the judgment below is affirmed.

CONTRERAS and O'CONNOR, JJ., concur.