David E. SEITZ and Microtherm, Inc., Plaintiff,

v.

RHEEM MANUFACTURING COMPANY, Water Heater Innovations, Inc. d/b/a Marathon Water Heaters, Defendants.

No. CV 06–2537–PHX–EHC.

United States District Court, D. Arizona.

Feb. 11, 2008.

Gerald L. Shelley, Michelle Joan Roddy, Nicole Maroulakos Goodwin, Quarles & Brady LLP, Phoenix, AZ, for Plaintiff.

Howard Ross Cabot, Christopher Stuart Coleman, Perkins Coie Brown & Bain PA, Michael E. Hensley, Jones Skelton & Hochuli PLC, Phoenix, AZ, for Defendants.

### ORDER

EARL H. CARROLL, District Judge.

Before the Court is Defendant Rheem Manufacturing's ("Defendant Rheem") "Motion to Dismiss Plaintiffs' Second Amended Complaint." (Dkt.31). Defendant Water Heater Innovation, Inc. d/b/a/ Marathon Water Heaters ("Defendant Marathon") filed a "Joinder in Defendant Rheem's Motion to Dismiss Plaintiffs' Second Amended Complaint and Separate Motion to Dismiss Plaintiff's Second Amended Complaint." (Dkt.30). The motions are fully briefed and the Court finds this matter suitable for decision without oral argument. For the reasons set forth herein, Defendants' motion is granted in part, and denied in part.[1]

### I. Procedural Background

Plaintiffs David E. Seitz ("Plaintiff Seitz") and Microtherm, Inc. ("Plaintiff Microtherm") (collectively "Plaintiffs") filed a Complaint against Defendants Rheem and Marathon on October 23, 2006, (Dkt.1), which was amended as of right on December 5, 2006. (Dkt.11). Defendants Rheem and Marathon filed a Motion to Dismiss the First Amended Complaint on February 2, 2007. (Dkt.18). Plaintiffs filed a Response to Defendants' first motion to dismiss and requested leave to file a Second Amended Complaint. (Dkt.21). On June 14, 2007, the Court granted Plaintiff's request for leave to file a Second Amended Complaint and denied without prejudice

Defendants' motion to dismiss. (Dkt.25). Plaintiffs' timely filed a Second Amended Complaint on July 11, 2007, which is the subject of the pending motions to dismiss. (Dkt.26).

### II. Factual Allegations

Plaintiff Seitz is the President and CEO of Microtherm, Inc. (Dkt.26, ¶ 1). "Mr. Seitz invented the tankless water heater and holds four (4) U.S. patents and a number of foreign patents for the electric tankless water heater." (Dkt.26, ¶ 1). Plaintiff Microtherm, "is a manufacturer of electric tankless water heaters and conducts business throughout the United States." (Dkt.26, ¶ 2). Defendant Rheem manufactures conventional tank water heaters. (Dkt.26, ¶¶ 3, 10). Defendant Marathon is a wholly-owned subsidiary of Rheem and is a seller of Rheem-manufactured conventional water heaters. (Dkt.26, ¶ 11). "Plaintiffs have designed, manufactured and are marketing an electronically controlled tankless water heater which is about the size of a briefcase and can be mounted on a wall virtually anywhere it is needed." (Dkt.26, ¶ 9). Plaintiffs allege that this tankless water heater "provides an endless supply of hot water, has a service life far in excess of conventional hot water heaters, and is environmentally friendly." (Dkt.26, ¶ 9).

#### A. The Watts Contract

On December 13, 2002, Plaintiff Microtherm entered a contract with Watts Water Technologies ("Watts") whereby Watts agreed to buy a minimum number of Microtherm electric tankless water heaters annually and re-sell these units under their own brand name. (Dkt.26, ¶¶ 13, 15). Pursuant to the contract, Watts ordered and Microtherm delivered 1,500 units of the Microtherm electric tankless water

---

**1.** Plaintiffs' Second, Fourth, Eight and Ninth claims for relief will be dismissed as to Defendant Marathon pursuant to an agreement between the parties. (*See* Dkt. 38).

heaters. (Dkt.26, ¶ 16). Plaintiff alleges that both parties to the contract intended that it would act as a "catalyst for Plaintiffs' business plan and would provide nationwide access to Microtherm manufactured electric tankless water heaters in many large business." (Dkt.26, ¶ 17). Plaintiffs allege that once "Microtherm's electric tankless water heaters were marketed by Watts under the Watts name, Microtherm reasonably anticipated that tens of thousands of Microtherm manufactured electric tankless water heaters would sell." (Dkt.26, ¶ 18). To support its decision to contract with Microtherm, Watts conducted testing of Microtherm's electric tankless water heaters, which "proved that the Microtherm manufactured electric tankless water heaters were superior to the other tested products." (Dkt.26, ¶ 19).

On October 21, 2004, the Group Vice President of Watts sent a letter to Microtherm stating in part:

Reference is made to our recent telephone discussions in which I informed you that we were not going to be able to pursue retail placement of your product due to requests from tank water heater manufacturers that Watts not enter the marketplace. As you know, we do a great deal of business with several of these manufacturers on our pressure relief valves.

(Dkt.26, ¶ 22). "In July, 2006, Microtherm learned that Defendants were the tank water heater manufacturer(s) that were pressuring Watts to end its relationship with Microtherm." (Dkt.26, ¶ 23). Plaintiffs allege that "Defendants intentionally and purposefully entered into a conspiracy and/or agreement with Watts to reduce competition in the water heater market in the United States." (Dkt.26, ¶ 25).

## B. Defendants' Alleged Defamatory Statements

Defendant Rheem "established its own line of gas powered tankless water heat-

ers" in 2005. (Dkt.26, ¶ 29). Plaintiffs allege that Defendants have misled the "general public as wells as the water heater industry about the performance and reliability of electric tankless water heaters in general, and the Microtherm technology in particular." (Dkt.26, ¶ 30). Specifically, Plaintiffs cite a "2006 advertisement / information circular by Marathon ... titled 'Tankless Electric Water Heaters ... the rest of the story.'" (Dkt.26, ¶ 30a). This publication allegedly misrepresented the "suitability and performance of electric tankless water heaters," stating:

- Tankless electric water heaters lack "longevity" due to water purity issues;

- Tankless electric water heaters are not covered by a sufficient warranty;

- Tankless electric water heaters place an "uncontrollable" burden on the utility and its customers;

- Tankless electric water heaters require "significant wiring upgrades" in addition to the cost of the heater itself;

- Servicing a tankless electric water heater is either cost prohibitive or impossible; and

- Twice the installed costs of a Marathon, more service (if you can find it), short life, and no savings over a Marathon—some deal! Wouldn't your customers prefer cost effective and hassle free water heating, with a Lifetime Warranty Marathon? Better for you and better for your utility.

(Dkt.26, ¶ 30a). Plaintiff's allege that "Defendants knowingly and intentionally published this false, misleading and deceptive propaganda as part of an overall smear campaign that dates back several years." (Dkt.26, ¶ 30a).

Plaintiff further alleges that:

[D]efendants have held and continue to hold "seminars" with utilities and other powerful industry groups throughout the country whereby [D]efendants warn their audience of the mythical "issues" posed by electric tankless water heaters. At these industry meetings, [D]efendants knowingly and intentionally provide literature containing false, misleading and/or deceptive data to support [D]efendants' disingenuous claims against electric tankless water heaters. For example, one such article, "Tankless Water Heaters are Brutal on the Grid When Popularized," paints an untrue doomsday scenario for utility companies in the event that electric tankless water heaters become prevalent.

(Dkt.26, ¶ 30b). Plaintiffs allege that Defendants sponsored publication of this article, and/or provided the arguments and substance of the article, and/or the authors were agents of Defendants, and/or the damaging substance in the article has its genesis in Defendants' illegal and tortious conduct. (Dkt.26, ¶ 30b). Microtherm claims that it learned about Defendants' advertisements and statement on or after July 11, 2006. (Dkt.26, ¶ 31).

## C. Claims for Relief

The Second Amended Complaint sets forth nine claims for relief. (Dkt.26). The First Claim for Relief is under the Lanham Act, 15 U.S.C. § 1125, for Defendants' alleged dissemination of false information about electric tankless water heaters. (Dkt.26, ¶¶ 35–38). The Second Claim for Relief is under the Sherman Antitrust Act, 15 U.S.C. § 1, for Defendants alleged actions in restraint of trade that purportedly caused Watts not to pursue retail placement of Microtherm manufactured electric tankless water heaters. (Dkt.26, ¶¶ 39–44). The Third Claim for Relief is under the Sherman Antitrust Act,

15 U.S.C. § 2, for Defendants' alleged attempts to monopolize the water heater market in the United States. (Dkt.26, ¶¶ 45–48). The Fourth Claim for Relief is under the Clayton Act, 15 U.S.C. § 14, for Defendants' alleged conditional contracting with distributors like Watts, which Plaintiffs allege have the effect of lessening competition in the water heater market. (Dkt.26, ¶¶ 49–51). The Fifth Claim for Relief is under the Arizona Antitrust Act, A.R.S. § 44–1401 et seq. for Defendants' alleged contract, combination or conspiracy to restrain or monopolize trade or commerce. (Dkt.26, ¶¶ 52–54). The Sixth Claim for Relief is for Product Disparagement and Injurious Falsehood for Defendants' alleged knowing publication of false statements. (Dkt.26, ¶¶ 55–57). The Seventh Claim for Relief is for Commercial Defamation for Defendants' alleged false statements about Microtherm and electric tankless water heaters. (Dkt.26, ¶¶ 58–61). The Eighth Claim for Relief is for Intentional Interference with Performance of a Contract by a Third Person for Defendants' alleged interference with the Microtherm and Watts contract. (Dkt.26, ¶¶ 62–64). The Ninth Claim for Relief is for Intentional Interference with Another's Performance of His Own Contract for Defendants' alleged interference with Microtherm's contractual obligations. (Dkt.26, ¶¶ 65–66). The Tenth Claim for Relief is for Intentional Interference with Prospective Contractual Relations for Defendants' alleged interference with Microtherm's prospective contractual relations and/or economic advantage. (Dkt.26, ¶¶ 67–68).

## III. Motion to Dismiss Standard

The Supreme Court recently retired the oft-quoted *Conley v. Gibson*[2] language that long-defined the standard district courts were to apply when deciding motions to

**2.** *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In *Twombly,* the Court

dismiss. *See Bell Atlantic Corp. v. Twombly,* —— U.S. ——, ——, 127 S.Ct. 1955, 1968, 167 L.Ed.2d 929 (2007). The Court, however, reiterated that the accepted pleading standard remains unchanged: "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly,* 127 S.Ct. at 1968. The Court further reminded district courts weighing a motion to dismiss to ask "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Twombly,* 127 S.Ct. at 1969 n. 8 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly,* 127 S.Ct. at 1965.

## IV. Plaintiff's Fourth Claim for Relief Under the Clayton Act

Defendants contend that Plaintiffs' Fourth Claim for Relief should be dismissed because "Section 3 of the Clayton Act applies only against sellers—not purchasers—who allegedly attempt to improperly condition the sale of goods on an agreement by the buyer not to deal with a competitor." (Dkt.31). Specifically, the alleged agreement between Rheem and Watts that forms the basis of Plaintiffs' Clayton Act claim is a contract for the purchase of parts by Rheem from Watts, making Rheem the *purchaser,* not the seller according to Defendants. Plaintiffs, in their response, do not contend that Section 3 of the Clayton Act should apply to purchasers. Rather, Plaintiffs insist that the Court must take Plaintiffs' assertion that "Defendants are manufacturers and sellers

of conventional tank water heaters" as true for the purposes of deciding a motion to dismiss. (Dkt.36). Defendants, in their reply, point out that Plaintiffs have not alleged that Rheem or Marathon improperly conditioned the *sale* of its water heaters on illicit agreements with its buyers and that the fact that Rheem and Marathon happen to sell water heaters has no relevance to the Clayton Act claim.

By its express language, Section 3 of the Clayton Act "defines liability in terms of a person who makes a sale or contracts for sale and nowhere provides for liability of the buyer." *See McGuire v. Columbia Broadcasting System, Inc.,* 399 F.2d 902, 906 (9th Cir.1968). Specifically, Section 3 provides that "[i]t shall be unlawful for any person engaged in commerce, in the course of such commerce ... to make a *sale or contract for sale* of goods ... or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement or understanding that the ... *purchaser thereof* shall not use or deal in the goods ... of a competitor...." 15 U.S.C. § 14 (emphasis added). Defendants cite to no authority that would allow a Section 3 claim to be brought against a *buyer* of goods, and the Court has not found such an authority.

■ Thus, the only issue is whether Plaintiffs' allegations are sufficient to support a Section 3 claim. Plaintiffs' Clayton Act claim is based upon the factual allegation that Watts did not pursue retail placement of Plaintiffs' electric tankless water heaters because Watts was pressured by Defendants. The letter cited by Plaintiffs in support of this allegation states that Watts was not pursuing retail placement "due to requests from tank water heater manufacturers that Watts not enter the marketplace." (Dkt.26, ¶ 22, Ex. B). The

stated that the "no set of facts" language from *Conley* had "been questioned, criticized, and explained away long enough[,]" and that

"[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard[.]" *See Twombly,* 127 S.Ct. at 1969.

letter goes on to state that "[a]s you know, we do a great deal of business with several of these manufacturers on our pressure relief valves." (Dkt.26, ¶ 22, Ex. B). It is clear from Watt's letter to Plaintiffs that Rheem is the buyer and Watts is the seller of its pressure relief valves. Plaintiff does not allege in this section or elsewhere in their Second Amended Complaint that Defendants were sellers to Watts. Thus, even if Plaintiffs' general allegation that Defendants are sellers of tank water heaters is proven true, this fact is not sufficient to support a claim based on Section 3, which requires Defendants to be *sellers* to Watts.

Accordingly, Plaintiffs have failed to state a claim for relief under the Clayton Act and this claim will be dismissed.

### V. Plaintiffs' Commercial Defamation Claim

 Defendants next contend that Plaintiffs' Seventh Claim for Commercial Defamation fails because the alleged statements are not directed at Plaintiffs and do not impugn Plaintiffs' honesty, integrity, virtue or reputation. (Dkt.31). "To be actionable as a matter of law, defamatory statements must be published in such a manner that they reasonably relate to specific individuals." *Hansen v. Stoll,* 636 P.2d 1236, 1240 (App.1981). It is not necessary for the defamatory statement to mention the plaintiff by name so long as there is such a description of or referring to the plaintiff that those who hear or read the statement understand the plaintiff to be the subject of the statement. *See Stoll,* 636 P.2d at 1240; *see also* RESTATEMENT (SECOND) OF TORTS § 564, comment b (1977).

Defendants contend that Plaintiffs' defamation claim fails because the alleged statements do not impugn Plaintiffs' financial integrity or business ethics, but simply reflect upon the quality of Plaintiffs' *products. See Turner v. Devlin,* 174 Ariz. 201, 203–204, 848 P.2d 286 (Ariz.1993) ("To be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation."). "Although a corporation may maintain an action for libel, it has no personal reputation and may be libeled only by imputation about its financial soundness or business ethics."[3] *Golden Palace, Inc. v. National Broadcasting Co.,* 386 F.Supp. 107, 109 (D.D.C.1974); *cf.*

---

3. The Ninth Circuit has discussed prior illustrative cases where imputations have been held libelous against corporations. *See Golden N. Airways,* 218 F.2d at 624–625 (authorities discussed therein). *See Den Norske Ameriekalinje Actiesselskabet v. Sun Printing & Publishing Ass'n,* 226 N.Y. 1, 122 N.E. 463 (N.Y.1919) (Accusing a company of fraudulently and illegally misrepresenting the nature of the cargo contained in its ship by falsifying the manifest and other documents and that it was engaged in violating the laws of this country by conveying, under circumstances of concealment and misrepresentation, a large supply of copper to Norway, whence it could be easily transported to the Central Powers with which we were then at war, and which in accordance with general knowledge were much in need of the material.); *Finnish Temperance Society v. Finnish Socialistic Pub. Co.,* 238 Mass. 345, 130 N.E. 845, 846 (1921) (Publication of two anonymous letters stating of the plaintiff, a temperance society, that its leaders are "scabs, men who have been in the reformatory, men who have run away to this country, wife deserters", that "the plaintiff profits through conducting gambling" etc.); *Axton–Fisher Tobacco Co. v. Evening Post Co.,* 169 Ky. 64, 183 S.W. 269 (1916) (Charge that a corporation placed a negro foreman as boss over white girls; and that it was on the unfair list, when the corporation maintained a union shop and had union labor patronage.); *Pennsylvania Iron Works Co. v. Henry Voght Mach. Co.,* 139 Ky. 497, 96 S.W. 551 (Ky.1906) (Charge that a company is a secondhand dealer, puts in inferior work, has a scab establishment and has not a mechanic in its place.); *Gross Coal Co. v. Rose,* 126 Wis. 24, 105 N.W. 225, 226 (1905) (Charging that a

*Golden N. Airways v. Tanana Publishing Co.*, 218 F.2d 612, 624 (9th Cir.1954) ("Since a corporation has no character to be affected by libel and no feelings to be injured, an article to be libelous as to a corporation must have a tendency to directly affect its credit or property or cause it pecuniary injury.").

Arizona courts have drawn a distinction between false statements directed at a plaintiff's *product* and those statements directed at a plaintiff itself. *See Fillmore v. Maricopa Water Processing Sys.*, 211 Ariz. 269, 120 P.3d 697, 705 (2005) (In contrast to [injurious falsehood and tortious business interference] in which general statements regarding a plaintiff's business or product may give rise to a claim for relief, a claim for defamation must be based on a statement that is "of and concerning" the plaintiff himself.) (citing *Stoll*, 130 Ariz. at 458, 636 P.2d 1236 (burden on plaintiff to show publication "of and concerning" him) (citing *inter alia* RESTATEMENT § § 564, 617)); *Modla v. Parker*, 17 Ariz.App. 54, 56–57, 495 P.2d 494, 496–97 (1972) (to constitute slander per se in business context, plaintiff must show defamation "of and concerning" plaintiff's personal business practices).

■ The Second Amended Complaint alleges that Defendants made various false statements about electric tankless water heaters without mentioning Plaintiffs directly. Statements about a type of product alone are not sufficient to support a

claim for defamation against a manufacturer of such products. *See Fillmore.*, 120 P.3d at 705.[4] As discussed in the following section, however, the allegations offered in support of Plaintiffs' commercial defamation claim may be offered in support of a claim for product disparagement.

Accordingly, Plaintiffs have failed to state a claim for commercial defamation and this claim will be dismissed.

## VI. Plaintiffs' Product Disparagement/Injurious Falsehood Claim

■ Defendants also seek dismissal of Plaintiffs' product disparagement/injurious falsehood claim on the same grounds, and for the additional reason that Plaintiffs did not seek leave to amend to add such a claim. The tort of product disparagement falls within the broader actions of defamation and injurious falsehood.[5] Product disparagement occurs where "[t]here is evidence that the defendant made false, misleading, and disparaging remarks about the plaintiff's *products.*" *See* 1–2 JURY INSTRUCTIONS IN COMMERCIAL LITIGATION § 2.28 (emphasis added); *see also Fillmore*, 120 P.3d at 703 (discussing the tort in Arizona under facts remarkably similar to the facts of this case); *Texas Beef Group v. Winfrey*, 11 F.Supp.2d 858, 864 (D.Tex.1998) ("The action for defamation is to protect the personal reputation of the injured party as distinguished from an action for disparagement which is to protect the economic interest of the injured party against pecuniary loss.").

---

coal dealer, at the time of a coal famine, when the people were suffering for want of fuel, not only charged extortionate prices for its coal, but actually refused to sell coal, even at such extortionate prices, to people suffering from sickness.).

4. Defendants bifurcate their argument into two theories: (1) the alleged statements are not directed at Plaintiffs; and (2) the alleged statements do not impugn Plaintiffs' character. Both arguments relate to whether or not

the alleged statements are "of and concerning" Plaintiffs.

5. "In the modern law the tort of 'injurious falsehood' is the general umbrella term for a collection of torts such as ... 'product disparagement' or 'trade libel'...." *See Fillmore v. Maricopa Water Processing Sys.*, 211 Ariz. 269, 120 P.3d 697, 703 (2005) (quoting from Rodney A. Smolla, 2 Law of Defamation § 11:34, at 11–44).

■ Defendants further contend that the alleged statements do not pertain to Plaintiffs' products specifically, but to electric tankless water heaters generally. *See supra.* The Second Amended Complaint does not allege that Plaintiffs are mentioned by name, but it does allege that Plaintiffs are the inventors of the electric tankless water heater. Considering Plaintiffs' status as the inventor of the electric tankless water heater, reasonable minds could find that the general statements about electric tankless water heaters were directed at Plaintiffs' products. Thus, the claim is plead adequately enough to survive a motion to dismiss. Whether or not Plaintiff can ultimately prove that the statements referred to Plaintiffs' products is a question for another day. *See, e.g., Texas Beef Group v. Winfrey,* 11 F.Supp.2d 858 (N.D.Tex.1998) (*on summary judgment,* a small group of Texas cattle ranchers were unable to demonstrate that disparaging statements made about the cattle industry as a whole were "of and concerning" them, where the *evidence in the record* demonstrated that there were "about a million" cattlemen in the United States).

As a practical matter, Plaintiffs' Seventh Claim for Relief for Commercial Defamation could simply be re-labeled as one for Product Disparagement or Injurious Falsehood. Because Plaintiffs' product disparagement claim arises out of the same occurrences as the commercial defamation claim, there is no prejudice in allowing this newly-added claim to proceed. *See Fillmore,* 120 P.3d at 703 (The theories of injurious falsehood and defamation tend to overlap "particularly in cases of disparagement of the plaintiff's business or product.") (quoting RESTATEMENT § 623A, cmt.

g). The alleged disparaging statements regarding electric tankless water heaters could satisfy some requirements of both theories. Thus, the Sixth and Seventh Claims can be combined and recast simply as a single claim for product disparagement/injurious falsehood.

## VII. Plaintiff's Lanham Act Claim

■ Defendants also contend that the same allegedly false statements regarding electric tankless water heaters and tankless water heaters generally are insufficient to support a Lanham Act claim because these alleged statements are not directed at Plaintiffs. Section 43 of the Lanham Act provides liability for a person who "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). While it may eventually be proven that the alleged statements were not directed at Plaintiffs' products, that issue is not well-suited for disposition at the motion to dismiss stage. For the same reasons discussed above with regard to Plaintiffs' product disparagement claim, Plaintiffs will be allowed to proceed with their Lanham Act claim and offer evidence in support thereof.

## VIII. Plaintiffs' Eight and Ninth Claims for Relief for Intentional Interference With Contract

Finally, Defendants contend that Plaintiffs' Eighth and Ninth Claims for Intentional Interference with Contract fail because the contract expired by its own terms, and thus, there could be no allegation of breach. Even if there was a breach, Defendants maintain that the breach must have occurred prior to May of 2004,[6] when the contract expired by its

---

**6.** In their Reply, Defendants state that the contract expired in June 2004. By the Court's calculations of 18 months from December 12, 2003, the agreement would have expired in June rather than May. The distinc-

own terms. If a breach occurred prior to May 2004, Defendants contend that the applicable two-year statute of limitations bars any claim for intentional interference. Plaintiffs make two arguments in response. First, they point out that the Second Amended Complaint alleges that Defendants induced or caused Watts "not to perform the contract." Plaintiffs' maintain that this is an allegation of breach even though it does not use the word "breach." Second, Plaintiffs contend that there is no statute of limitations problem because the Second Amended Complaint alleges that Plaintiffs did not learn until July 2006, that Defendants "were the tank water heater manufacturer(s) that were pressuring Watts to end its relationship with Microtherm." (Dkt.26, ¶ 23).

 The tort of intentional interference with contractual relations requires a plaintiff to prove: (1) the existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferor, (3) intentional interference inducing or causing a breach, (4) resultant damage to the party whose relationship has been disrupted, and (5) that the defendant acted improperly. *Safeway Ins. Co. v. Guerrero*, 210 Ariz. 5, 10, 106 P.3d 1020 (Ariz.2005). Plaintiffs and Defendants agree that "breach" is an essential element of the claim. The Second Amended Complaint states in plain language that Defendants interfered by "inducing or otherwise causing Watts not to perform the contract." (Dkt.5, ¶ 63). Thus, it appears that the Second Amended Complaint adequately alleges that a breach occurred.

 Defendants point out in their Reply that the remainder of the allegations in the Second Amended Complaint do not reference an alleged breach. Moreover, they contend that even if the allegations mention a breach, such allegations would be contradicted by the terms of the Watts contract, which is attached as an exhibit to the Second Amended Complaint. The Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001) (arbitration award attached to the plaintiff's complaint contained extensive factual allegations that fatally undermined the plaintiff's claim). Nonetheless, it would be premature at the motion to dismiss stage for the Court to delve into contractual interpretation of the Watts agreement checking each term of the contract against each factual allegation in the complaint. Plaintiffs' allegation that a breach occurred is sufficient to allow Plaintiffs to offer evidence in support of their claim.

 The Court now turns to Defendants' argument that if a breach occurred, it must have occurred prior to the expiration of the contract in May or June 2004, rendering any claim for intentional interference barred by the statute of limitations. In Arizona, claims for wrongful interference with contract have a two-year statute of limitations. *See* A.R. S. § 12–542; *Clark v. Airesearch Mfg. Co.*, 138 Ariz. 240, 244, 673 P.2d 984 (Ariz.Ct.App. 1983). While a statute of limitations defense may be raised by a motion to dismiss, a "complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *AdVnt Biotechnologies, LLC v. Bohannon*, 2007 WL 1875670, 2007 U.S. Dist. LEXIS 47160 (D.Ariz.2007). Because Plaintiffs alleged that they did not discover until July 2006, that Defendants were the tank water heater manufacturers that were pressuring Watts to end its relationship with Microtherm, the Court can-

tion is not important for the purposes of ruling on Defendants' motions.

not conclude that their claims were untimely when filed several months later in December 2006. *See AdVnt Biotechnologies, LLC,* 2007 WL 1875670 at *1–2, 2007 U.S. Dist. LEXIS 47160 at *3–4 (motion to dismiss denied where the complaint specifically alleged *discovery* of the defendant's wrongful actions less than two years before the complaint was filed).

Accordingly,

**IT IS ORDERED** granting in part, and denying in part Defendants' Motion to Dismiss (Dkt.31).

**IT IS FURTHER ORDERED** dismissing Plaintiffs' Fourth and Seventh Claims for Relief against all Defendants. The allegations in support of the Seventh Claim for Commercial Defamation may be combined with Plaintiffs' Sixth Claim for Product Disparagement/Injurious Falsehood.

**IT IS FURTHER ORDERED** dismissing Plaintiffs' Second, Eight, and Ninth Claims for Relief against Defendant Marathon only.