294 P.3d 151

**Sylvia L. REYNOLDS, a married woman; and Douglas L. Reynolds, a married man, Plaintiffs/Appellants,**

**v.**

**Robin REYNOLDS and Leonard Gold, husband and wife, Defendants/Appellees.**

**No. 1 CA–CV 12–0276.**

Court of Appeals of Arizona, Division 1, Department C.

Jan. 31, 2013.

Law Offices of Paul Kleven, Berkeley, CA By Paul Kleven and Benedetto Torgenson, PLC By John P. Torgenson, Phoenix, Attorneys for Plaintiffs/Appellants.

Jaburg & Wilk, P.C. By Maria Crimi Speth, Phoenix, Attorneys for Defendants/Appellees.

## OPINION

HALL, Judge.

¶ 1 Sylvia L. Reynolds and Douglas L. Reynolds (collectively, the siblings) appeal the superior court's order dismissing the siblings' complaint against their sister, Robin Reynolds, and her husband, Leonard Gold (collectively, the Golds). For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 On August 26, 2011, the siblings filed a complaint against the Golds, alleging defamation and false light for Robin's article, "*I Want To Die Like A Dog: Poignant Insights On Aging Gracefully,*" (the article) published in the online magazine, *phoenixWoman.* The siblings specifically asserted that the following excerpt "creates false innuendo with reckless disregard of the statement's truth:"

> Many years ago, my mother made a point of saying to my siblings and me that she didn't ever want to be a burden to us, but as she has aged, her denial has grown. I have been called to her home in the middle of the day and the middle of the night for emergencies that range from—"I can't find my hearing aid and I need it now!" to a neighbor who found her in the gutter after she fell taking the garbage out in the rain. I have patiently and willingly helped in these large and small crises, but as our visits have become more about solving her problems than about visiting about our lives, my frustration has grown. Regardless of the magnitude of these mishaps, I am expected to respond promptly with lit-

tle regard for how stressful these episodes are for my family and me.

After finding medication on the floor, nearly setting her house on fire by overcooking something in the microwave and continual falls that landed her in the hospital, I pleaded with my mother and my siblings (who do not live in the same state) to support our mother's transition to assisted living where she could find the company of people her own age and where access to 24/7 help is just a push of a button away.

But years ago my sister promised my mother that she would not put her in a home. Yet now, she admits that our mother's next step will probably be into skilled nursing care.

To me, this scenario is much more like the traditional nursing home that my mother is trying to avoid rather than being in the home-like environment of assisted living. I understand that no senior living situation is perfect, but at least, some of the minor missing-heating-pad, phone-is-off-the-hook and meal-prep crises could be mitigated without my intervention.

Still, the everyday calamities or even the disagreement about in-home versus assisted living care is not the real issue. **The issue is that my mother has no plan. She says, "w hen the time comes, I'll make that decision." But the truth is, "w 'hen the time comes," she may not be cognizant of the decisions that need to be made and at a time of extreme stress, the decisions will be left to her children who have not agreed on much thus far. My therapist tells me that it is more often the norm that the elderly have no care plans and for there to be intense disagreement among family members as to how to handle things. When people have made end-of-life plans, she says, "it's like a breath of fresh air."** (Emphasis as in complaint).[1]

¶ 3 The Golds moved to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Arizona Rules of Civil Procedure (Rule) 12(b)(6). After hearing oral argument, the superior court granted the Golds' motion to dismiss.

¶ 4 The siblings timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) section 12–2101(A)(1) (Supp. 2012).

## DISCUSSION

¶ 5 The siblings argue on appeal that the superior court erred because (1) the article was defamatory under Arizona law, and (2) even if the statements were not defamatory, the court should not have dismissed the false-light claim.

¶ 6 We review de novo the superior court's dismissal of a complaint pursuant to Rule 12(b)(6). *Coleman v. City of Mesa*, 230 Ariz. 352, 355–56, ¶¶ 7–8, 284 P.3d 863, 866–67 (2012). Dismissal under Rule 12(b)(6) is appropriate "only if as a matter of law [ ] plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof." *Id.* at ¶ 8 (citation omitted); *see also T.P. Racing, L.L.L.P. v. Ariz. Dep't of Racing*, 223 Ariz. 257, 259, ¶ 8, 222 P.3d 280, 282 (App.2009) ("[W]e assume the truth of the allegations set forth in the complaint and uphold dismissal only if the plaintiffs would not be entitled to relief under any facts susceptible of proof in the statement of claim.") (citation omitted); *Dube v. Likins*, 216 Ariz. 406, 416, ¶ 34, 167 P.3d 93, 103 (App.2007).

### I. The Defamation Claim.

¶ 7 The siblings first contend that the superior court erred by dismissing their defamation claim. The siblings maintain that the statement in the article that their mother "has no plan" was false because: she had a professionally prepared end-of-life plan; the article insinuated that Robin's "siblings" were responsible for their mother not having a plan; and the article was actionable as defamation because the average reader would "think worse of individuals who had

---

**1.** The siblings omitted portions of the excerpt through the use of ellipses in their complaint. To place the portions of the excerpt to which the siblings object in appropriate context, we have reinserted the omitted words. *See Turner v. Dev-* lin, 174 Ariz. 201, 208, 848 P.2d 286, 293 (1993) ("The reasonable inferences to be drawn must be determined by reading the letter as a whole, not by singling out two words.").

been involved in their mother's affairs but had ignored Robin['s] pleas and recklessly ensured that their 92–year–old mother did not have an end-of-life plan in place as she approached incompetence and death."

■ ¶ 8 "One who publishes a false and defamatory communication concerning a private person ... is subject to liability, if, but only if, he (a) knows that the statement is false and it defames the other, (b) acts in reckless disregard of these matters, or (c) acts negligently in failing to ascertain them." *Dube*, 216 Ariz. at 417, ¶ 35, 167 P.3d at 104 (quoting Restatement (Second) of Torts § 580(B) (1977)). "To be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Turner v. Devlin*, 174 Ariz. 201, 203–04, 848 P.2d 286, 288–89 (1993) (quoting *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 341, 783 P.2d 781, 787 (1989)). "[D]efamatory statements must be published in such a manner that they reasonably relate to specific individuals.... While the individual need not be named, the burden rests on the plaintiff to show that the publication was 'of and concerning' him." *Hansen v. Stoll*, 130 Ariz. 454, 458, 636 P.2d 1236, 1240 (App.1981) (citing Restatement (Second) of Torts §§ 564, 617).

■ ¶ 9 The court determines as a matter of law "whether a communication is capable of bearing a particular meaning," and, if so, "whether that meaning is defamatory." Restatement (Second) of Torts § 614(1). If both these questions are answered in the affirmative, a jury then decides whether the defamatory meaning of the statement was conveyed to the recipient. *See* Restatement (Second) of Torts § 614(2); *see also Yetman v. English*, 168 Ariz. 71, 79, 811 P.2d 323, 331 (1991). As explained in comment b to section 614 of the Restatement (Second) of Torts:

The court determines whether the communication is capable of bearing the meaning ascribed to it by the plaintiff and whether the meaning so ascribed is defamatory in character. If the court decides against the plaintiff upon either of these questions, there is no further question for the jury to determine and the case is ended. If, on the other hand, the judge decides that the communication is capable of bearing the meaning in question and that that meaning is defamatory, there is then the further question for the jury, whether the communication was in fact understood by its recipient in the defamatory sense.[2]

■ ¶ 10 Applying these principles here, the only statement in the article that the siblings allege to be false is: "The issue is that my mother has no plan." By itself, this statement is not capable of bearing the meaning that the siblings were the cause of their mother not having a plan in place. In other words, the statement, taken in isolation, is not "of and concerning" the siblings. However, the "meaning of words and statements should not be construed in isolation; rather, consideration should be given to the context and all surrounding circumstances, including the impression created by the words used and the expression's general tenor." *Burns v. Davis*, 196 Ariz. 155, 165, ¶ 39, 993 P.2d 1119, 1129 (App.1999); *see also* Restatement (Second) of Torts § 563 comment d ("The context of a defamatory imputation includes all parts of the communication that are ordinarily heard or read with it.").

■ ¶ 11 The siblings assert that, when viewed as a whole, the excerpted portion of the article conveys the impression that the "siblings"[3] were responsible for their mother's failure to have an end-of-life plan. *See Phoenix Newspapers v. Church*, 103 Ariz. 582, 588, 447 P.2d 840, 846 (1968) ("A person may be liable for what he insinuates as well

---

**2.** "In some cases imputations are so clearly innocent or so clearly defamatory that the court is justified in determining the question itself." *Id.* at cmt. d.

**3.** Even though the article does not name Sylvia and Douglas as Robin's siblings, an otherwise defamatory statement is actionable if the objects of the defamatory statement can be readily ascer-

tained. *Hansen*, 130 Ariz. at 458, 636 P.2d at 1240. Because the article listed "Robin Reynolds" as the author, the siblings' identities could be readily ascertained. *See id.* at 459, 636 P.2d at 1241 ("It is not necessary to prove that every reader could make the connection, as publication to any individual will suffice.").

as for what he says explicitly.") (internal quotation omitted). We disagree with the siblings' assertion.

¶ 12 Although the article clearly conveys that Robin disagreed with her siblings as to whether their mother should be encouraged to "transition" to an assisted-care living facility, the article cannot fairly be read as implying that they were responsible for their mother not having an end-of-life plan. Accordingly, the superior court did not err in dismissing the defamation claim.[4]

## II. The False Light Invasion of Privacy Claim.

¶ 13 The siblings next contend that the superior court erred by dismissing their false-light claim. The tort of false light invasion of privacy occurs when:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Godbehere,* 162 Ariz. at 338, 783 P.2d at 784 (quoting Restatement (Second) of Torts § 652(E) (1977)). Thus, a defendant in a false-light case cannot be liable "unless the publication places the plaintiff in a false light highly offensive to a reasonable person." *Id.* at 340, 783 P.2d at 786.

¶ 14 Unlike defamation, false light does not protect reputation or good name, but rather protects mental and emotional interests. *Id.* at 341, 783 P.2d at 787. "[T]o qualify as a false light invasion of privacy, the publication must involve 'a major misrepresentation of [the plaintiff's] charac-

ter, history, activities or beliefs,' not merely minor or unimportant inaccuracies." *Id.* (quoting Restatement (Second) of Torts § 652E comment c). Further, "[a] false light cause of action may arise when something untrue has been published about an individual, *or* when the publication of true information creates a false implication about the individual. In the latter type of case, the false innuendo created by the highly offensive presentation of a true fact constitutes the injury." *Id.* (internal citations omitted).

¶ 15 We have already determined that the excerpt from the article was not capable of conveying the meaning that the siblings were responsible for their mother's asserted lack of an end-of-life plan. Because the sentence relied upon by the siblings did not "concern" them, the article therefore did not place the siblings "before the public in a false light." Accordingly, the superior court properly dismissed the siblings' false-light claim.

¶ 16 The Golds have requested attorneys' fees on appeal pursuant to A.R.S. § 12–349(A)(1) (2003) on the basis the appeal was "without substantial justification." " '[W]ithout substantial justification' means that the claim or defense constitutes harassment, is groundless and is not made in good faith." A.R.S. § 12–349(F).[5] All three elements must be proven by a preponderance of the evidence and "the absence of even one element render[s] the statute inapplicable." *Cypress on Sunland Homeowners Ass'n v. Orlandini,* 227 Ariz. 288, 301, ¶ 49, 257 P.3d 1168, 1181 (App.2011) (citation omitted). Although we affirm the judgment, we cannot say that the record and briefs on appeal support an award of attorneys' fees pursuant to A.R.S. § 12–349(A)(1). We therefore deny the Golds' fee request. As the prevailing party on appeal, the Golds are entitled to their costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.

---

4.  Because we have determined that the article is incapable of bearing the meaning ascribed to it by the siblings, we need not determine whether such meaning would be defamatory. *See Turner,* 174 Ariz. at 203–04, 848 P.2d at 288–89.

5.  Effective January 1, 2013, a finding that an action or defense was brought "without substantial justification" no longer requires a determination that it constituted harassment. Laws 2012, Ch. 305, § 2. Our conclusion in this case would be the same under the law as amended effective January 1, 2013.

## CONCLUSION

¶ 17 For the foregoing reasons, we affirm.

CONCURRING: PETER B. SWANN and SAMUEL A. THUMMA, Judges.